Colonial Management Group, L.P. ("Colonial"), appeals from a judgment of the circuit court affirming the decision of the State Health Planning and Development Agency Certificate of Need Review Board ("CONRB") granting an application filed by Tuscaloosa Treatment Center Associates, L.L.C. ("TTC"), for a certificate of need ("CON") to construct and operate a methadone clinic in Livingston, Alabama. *Page 974 
On August 4, 2000, TTC submitted to the State Health Planning and Development Agency ("SHPDA") a letter of intent to file a CON application. See Ala. Admin. Code (SHPDA Rules and Regulations) Reg.410-1-7-.05. On October 10, 2000, TTC filed its CON application; SHPDA deemed the application complete on October 25, 2000. See SHPDA Reg.410-1-7-.06 and -.08. After TTC's CON application was deemed complete, Colonial filed a statement of intervention and requested that SHPDA conduct a contested-case hearing on TTC's CON application. See SHPDA Reg. 410-1-9-.03. An administrative law judge (hereinafter "the ALJ") was appointed and a contested-case hearing was held on March 21, 2001. The ALJ heard the testimony of witnesses on behalf of TTC and Colonial and received documentary evidence in support of TTC's application. After the contested case hearing, on June 6, 2001, the ALJ submitted a recommended order to the CONRB suggesting that the CONRB deny TTC's CON application.
Pursuant to SHPDA Reg. 410-1-8-.05(2), TTC filed written exceptions to the ALJ's June 6, 2001, recommended order. Colonial responded. On July 17, 2001, the CONRB held a hearing on TTC's CON application. On July 31, 2001, the CONRB entered an order granting TTC's CON application. Colonial filed a request for a rehearing. See SHPDA Reg. 410-1-8-.09. On October 3, 2001, the CONRB denied Colonial's request for a rehearing. Colonial filed a request to stay the CONRB's order pending an appeal; the CONRB denied Colonial's request. Colonial appealed to the Montgomery Circuit Court (hereinafter "the trial court"). The trial court held a hearing on February 19, 2002. On March 29, 2002, the trial court entered a judgment affirming the CONRB's decision. Colonial appealed.
This court reviews a trial court's judgment regarding the decision of an administrative agency "without any presumption of its correctness, since [the trial] court was in no better position to review the [agency's decision] than" this court. State Health Planning Res. Dev. Admin.v. Rivendell of Alabama, Inc., 469 So.2d 613, 614 (Ala.Civ.App. 1985). Under the Alabama Administrative Procedure Act ("AAPA"), § 41-22-1 et seq., Ala. Code 1975, which governs judicial review of agency decisions,
 "[e]xcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
 "(1) In violation of constitutional or statutory provisions;
"(2) In excess of the statutory authority of the agency;
"(3) In violation of any pertinent agency rule;
"(4) Made upon unlawful procedure;
"(5) Affected by other error of law;
 "(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or *Page 975 
 "(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."
§ 41-22-20(k), Ala. Code 1975 (emphasis added). In reviewing the decision of a state administrative agency, "[t]he special competence of the agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not made in compliance with applicable law." Alabama Renal Stone Inst., Inc. v. AlabamaStatewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App. 1993). "The weight or importance assigned to any given piece of evidence presented in a CON application is left primarily to the [CONRB's] discretion, in light of the [CONRB's] recognized expertise in dealing with these specialized areas." State Health Planning Dev. Agencyv. Baptist Health Sys., Inc., 766 So.2d 176, 178 (Ala.Civ.App. 1999). Neither this court nor the trial court may substitute its judgment for that of the administrative agency. Alabama Renal Stone Inst., Inc. v.Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823
(Ala.Civ.App. 1993). "This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result." Health Care Auth. of Huntsville v. StateHealth Planning Agency, 549 So.2d 973, 975 (Ala.Civ.App. 1989). Further, "an agency's interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation." Sylacauga Health Care Ctr., Inc. v. Alabama StateHealth Planning Agency, 662 So.2d 265, 268 (Ala.Civ.App. 1994).
Colonial first asserts that the trial court erred in that it applied the wrong standard to its review of the CONRB's order. Pursuant to the AAPA, § 41-22-20(k), Ala. Code 1975, an agency's order is presumed "just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Colonial asserts that there is an exception to the "just-and-reasonable" standard of review when the CONRB rejects the ALJ's recommended findings and issues an order contrary to the ALJ's recommended order. Colonial asserts that before it can reject the ALJ's recommendation, the CONRB must rely on substantial evidence stronger than that upon which the ALJ relied. In support of this assertion, Colonial cites this court's decision in Forest Manor, Inc. v. State HealthPlanning Development Agency, 723 So.2d 75 (Ala.Civ.App. 1998). Before discussing the details of that case, this court notes that that case was decided before the enactment of Act No. 98-341, Ala. Acts 1998, "the Freeman Act," which significantly amended the provisions of the Alabama Code related to SHPDA.
In Forest Manor, Inc. v. State Health Planning DevelopmentAgency, supra, Forest Manor, along with five other health-care providers, submitted applications for a CON to provide nursing-home services in Baldwin County. One of the health-care providers that submitted an application requested that a contested-case hearing be held on all of the applications, and a contested-case hearing was held before an ALJ pursuant to SHPDA Reg. 410-1-7-.15 and Reg. 410-1-8-.02. Following the hearing, the ALJ submitted an order recommending that the CONRB deny Forest Manor's CON application. The CONRB rejected the ALJ's recommendation and granted Forest Manor's CON application. The CONRB's decision was appealed for a fair hearing pursuant to § 22-21-275(14), Ala. Code 1975 (now amended). The fair-hearing officer issued an order reversing the CONRB's order. Forest Manor appealed to the circuit *Page 976 
court. The circuit court affirmed the fair-hearing officer's order denying Forest Manor's CON application. Forest Manor appealed to this court.
The parties in Forest Manor, Inc. v. State Health Planning Development Agency did not dispute that upon review, the decision of an agency is entitled to deference, is presumed correct, and will not be reversed unless the decision was arbitrary, capricious, or not in compliance with applicable law. Forest Manor, Inc. v. State HealthPlanning Dev. Agency, 723 So.2d at 79. However, the parties did dispute to which decision this deferential standard applied. Id. This court held that "`[t]he decision of the fair hearing officer [was] the final decision of [the SHPDA].'" Forest Manor, Inc. v. State HealthPlanning Dev. Agency, 723 So.2d at 79 (quoting Methodist Homes forthe Aging Corp. v. Stewart, 594 So.2d 161, 163 (Ala.Civ.App. 1992)). Thus, this court concluded, the fair-hearing officer's decision rather than the CONRB's decision was entitled to a presumption of correctness on appeal. Id.
However, as previously stated, this court's decision in Forest Manor,Inc. v. State Health Planning Development Agency was decided before the Freeman Act amended certain provisions of §§ 22-21-270, -274, and -275, Ala. Code 1975. One of the changes to those provisions eliminated the mandatory requirement of requesting a fair hearing or applying for a rehearing before the CONRB as a condition precedent to the judicial review of a CONRB's decision. § 22-21-275(6) and (12), Ala. Code 1975. The Freeman Act's amendments to the Alabama Code sections related to SHPDA became effective in 1998. Thus, because, after the effective date of the Freeman Act, a party seeking a CON is no longer required to appeal the CONRB's decision to a fair-hearing officer, the decision of a fair-hearing officer may no longer be the "final decision of [the SHPDA]" in all cases. Under the current statutory provisions, if a party does not seek a fair hearing before it appeals the CONRB's decision to the circuit court, the CONRB's decision becomes the final decision of SHPDA; thus, the CONRB's order is the decision of the SHPDA that is entitled to a presumption of correctness on appeal.
Further, this court has rethought its holding that the CONRB's decision is subject to a higher standard of review when it rejects the recommended order of the ALJ; we now believe that that part of the holding in ForestManor, Inc. v. State Health Planning Development Agency was wrongly decided. The contested-case hearing in Forest Manor, Inc. was tried before the ALJ pursuant to SHPDA Reg. 410-1-8-.02. That regulation provides that, following the contested-case hearing, the ALJ must make a recommendation to the CONRB to approve or deny the CON application. Pursuant to SHPDA Reg. 410-1-8-.05, the CONRB must accept or reject ALJ's recommendation by a majority vote. In his dissent in Forest Manor, Inc., Judge Crawley properly stated that "the ALJ's recommendation is not a binding order on the parties, and the SHPDA regulations do not require that the CONRB give any deference to an ALJ's recommendation. See SHPDA Reg. 410-1-8-.05." Forest Manor, Inc. v. State Health Planning Dev. Agency, 723 So.2d at 82 (Crawley, J., dissenting, joined by Thompson, J.). As in this case, many CONRB decisions involve an analysis of statistical and demographic data that is unaffected by an assessment of witness credibility and demeanor. However, we would note that there is merit to the notion that when an ALJ has conducted an ore tenus proceeding and is the only administrative official *Page 977 
to have had the opportunity to observe the witnesses and evaluate their credibility and demeanor, there should be "at least some degree of deference to the hearing officer's findings when conflicting testimony and demeanor evidence are involved." See Personnel Board v. King,456 So.2d 80, 82 (Ala.Civ.App. 1984). Thus, where there is substantial evidence, other than a witness's ore tenus testimony and demeanor, that is probative of the witness's credibility or lack thereof, that evidence may be considered by the CONRB and the CONRB is free to rule consistently with such other evidence. However, we would note that when the only substantial evidence as to the credibility of a witness is the witness's own testimony and demeanor at an ore tenus proceeding conducted by an ALJ, a CONRB that has not seen or heard the witness testify would have no basis, other than the ALJ's findings, upon which to assess the credibility of the witness. Thus, where the credibility or lack of credibility of the witness is material to the outcome of a contested case, the fact that the only available evaluation of the witness's credibility comes from the ALJ's proposed findings should have to be considered in evaluating whether the CONRB's ultimate decision is supported by substantial evidence.
This court concludes that under the facts of this case, pursuant to the SHPDA regulations, it is within the CONRB's discretion to accept or reject the ALJ's recommendation. See SHPDA Reg. 410-1-8-.05. Further, in a case such as this where the CONRB's order is the final decision of SHPDA, the CONRB's order is entitled to a presumption of correctness on appeal. Thus, this court's review of the CONRB's decision is deferential. This court, in considering the other evidentiary issues raised on appeal, will not reverse the CONRB's order unless it is arbitrary, capricious, or not in compliance with applicable law. See §22-21-275(6) and (12), Ala. Code 1975; Alabama Renal Stone Inst., Inc.v. Statewide Health Coordinating Council, supra.
Colonial argues that the trial court erred in affirming the CONRB's order because, it says, the order was inconsistent with the current applicable State Health Plan ("SHP").[1] Before granting a CON application for a methadone-treatment facility, the CONRB must determine, among other things, that the application for the proposed health-care facility, service, or capital expenditure is consistent with the SHP that was effective when SHPDA received the application for the CON. §22-21-263, -264, and -266, Ala. Code 1975; SHPDA Reg. 410-6-1-.02. The current SHP, the 1996-1999 SHP, is codified in Chapter 410 of the Alabama Administrative Code, specifically at SHPDA Reg. 410-2-1-.01 through410-2-5-.05 (2002).[2] As related to methadone-treatment facilities, the SHP states, in pertinent part:
"(3) Methadone Treatment
 "(a) Prior to June 1991 Alabama operated two methadone clinics in Birmingham and in Mobile, both of which were operated through a DMH/MR contract. These clinics are part of the UAB Mental Health Center and the Mobile Mental Health Center. The average number of clients served in any given month never exceeded 380 of which fewer than 5% were clients from out of state.
 "(b) From June 1991 until September 30, 1995 the number of clinics has grown to a total of 13 statewide. The number of clients in any given month by the 11 private clinics averages over 1,200. Approximately *Page 978 
40% of the clients are from the surrounding states of Tennessee, Mississippi, Georgia, and Florida. For this reason, it would appear that the location of these clinics have been strategically located close to each of these state lines. The DMH/MR has pending applications requesting certification for an additional eight clinics and has been contacted about the prospects of an additional six new applications. If all theses were made operational, there would be a total of 27 clinics in the state of Alabama — an increase of 1250% in the number of such clinics in the last 5 years.
 "(c) The proliferation of these clinics has become a major public health care policy issue and consequently requires examination to determine the overall need for such clinics throughout the state. Since these clinics are health care facilities which dispense medications, they are subject to the certificate of need process. All new clinics must file for a certificate of need. In order to determine a methodology by which to project the need for methadone treatment and maintenance for the citizens of Alabama, the Statewide Health Coordinating Council recommends a two year moratorium on any new clinics not now operational."
Ala. Admin. Code (SHPDA) Reg. 410-2-4-.11.
Colonial asserts that the location of TTC's facility and the potential use of the facility by out-of-state residents is inconsistent with the 1996-1999 SHP. The moratorium imposed by the 1996-1999 SHP expired more than two years before TTC filed its October 10, 2000, CON application; no methodology "to project the need for methadone treatment and maintenance for the citizens of Alabama" was ever established. Because of a lack of guidance, SHPDA requested "suggestions" from the State Methadone Authority for types of data to be submitted by applicants in support of a CON application. The State Methadone Authority sent a letter to SHPDA suggesting that certain data, including statistical data, be submitted in support of a CON application to establish a methadone-treatment facility; however, those suggestions included no reference to or restrictions on the location of new methadone-treatment facilities. On August 17, 2000, SHPDA forwarded the suggestions in the State Methadone Authority's letter to persons seeking to receive certificates of need for a methadone-treatment facility.
In its July 31, 2001, order, the CONRB found that TTC's proposal for its methadone-treatment facility was consistent with the current SHP. Although the 1996-1999 SHP included statements regarding the State Health Coordinating Council's[3] concern of the placement of methadone-treatment facilities near Alabama's borders and the need to establish a methodology to determine whether a need exists in a certain area for a facility, the moratorium imposed by that section has expired and no methodology for determining the necessity of methadone-treatment facilities was ever established. Further, the current SHP does not prohibit methadone-treatment facilities from being placed near the borders of the state or from treating out-of-state patients. Thus, this court cannot say that the CONRB erred in concluding that TTC's application was in compliance with the applicable SHP. Further, this court cannot say that the CONRB's conclusion *Page 979 
that TTC's CON application was in compliance with the applicable SHP was arbitrary or capricious or that it was not in compliance with applicable law. See Alabama Renal Stone Inst., Inc. v. Statewide Health CoordinatingCouncil, supra; § 41-22-20(k), Ala. Code 1975.
Colonial further asserts that the trial court erred in affirming the CONRB's July 31, 2001, order because, it says, the order was inconsistent with applicable CON statutes and regulations. Colonial asserts that TTC's application failed to comply with applicable statutes and regulations. In support of its argument, Colonial argues that TTC failed to present sufficient evidence of a "substantially unmet need" in the area where it proposed to place its treatment facility and that the CONRB included residents of another state in its determination of need in determining whether TTC had demonstrated a "substantially unmet need."
In addition to the requirement that the application for a methadone-treatment facility be consistent with the current SHP, before granting a CON application for a methadone-treatment facility the CONRB must determine that the applicant has demonstrated a "substantially unmet public requirement for the proposed health care facility, service or capital expenditure." § 22-21-264(4), Ala. Code 1975. Pursuant to SHPDA Reg. 410-1-6-.05, the
 "[d]etermination of a substantially unmet public requirement for the proposed health care facility, service, or capital expenditure shall be made before approval may be granted. The need shall be consistent with orderly planning within the state and community for furnishing comprehensive health care. Such determination of need shall be made based on the merits of the proposal after giving appropriate consideration to the following:
". . . .
 "(b) specific data supporting the demonstration of need for the proposed change in facility or service shall be reasonable, relevant, and appropriate."
In support of its application, TTC submitted, among other things, information regarding its proposed facility; articles and information on methadone treatment; information regarding the number of methadone-treatment facilities and patients in Alabama; information regarding the number of drug-related offenses and arrests in Sumter County; and a letter from the mayor of Livingston indicating the mayor's support for the proposed facility at the proposed location. At the March 21, 2001, hearing Nathan Watkins, the district attorney for the 17th judicial circuit, which includes the City of Livingston and Sumter County, testified on behalf of TTC. Watkins testified that in addition to serving as the district attorney, he had also sat on the West Alabama Mental Health Board since it was formed in 1972. According to Watkins, he was familiar with the health needs of the Sumter County area. Watkins testified that the Livingston community needed the facility and that the community supported the placement of the facility in Livingston. Watkins stated that at the time of the ALJ hearing, he was prosecuting four pending cases involving charges of forged prescriptions for opiate-derivative drugs, a type of drug an addiction for which might be treated with methadone.
Two patients, one from Alabama and one from Mississippi, from TTC's Tuscaloosa methadone-treatment facility testified that their treatments required them to drive long distances and that they would use a methadone-treatment facility in Livingston if one were located there. Both patients testified that they knew several other people who suffered from opiate-related addictions and who would use a *Page 980 
methadone-treatment facility if one were located in Livingston.
Kenneth Elliot Warner, the medical director of TTC's Tuscaloosa facility, testified that methadone may be used to treat addictions to heroin, Lortab, Lorcet, Dilaudid, Oxycontin, and other prescription pain medication. According to Warner, a need existed for a methadone-treatment facility in Sumter County. Warner testified that at the time of the hearing, TTC's Tuscaloosa facility had six patients from west Alabama. Warner testified that some of his patients had informed him that they knew of other addicts who would like to receive treatment but who were unable to travel the distance to the Tuscaloosa facility. Warner testified that because of the rural nature of the Sumter County area, statistical data regarding the number of persons arrested or treated for opiate use in Sumter County was not readily available and would be difficult to collect. According to Warner, approximately one-fourth of the patients receiving treatment at TTC's Tuscaloosa facility are residents of Meridian, Mississippi. Warner stated that the "bulk of the need" for the methadone-treatment facility comes from Meridian, Mississippi.
Steven Nippert, the executive director of TTC, testified that he had difficulty obtaining statistical data regarding opiate-related arrests and deaths because of the rural nature of Sumter County. Nippert stated that he was aware of 6 to 10 patients from TTC's Tuscaloosa methadone-treatment facility who would use a facility in Sumter County if one were located there. Nippert testified that 95% of the patients treated at TTC's Tuscaloosa facility are addicted to prescription pain medication and not to heroin. According to Nippert, from his experience, addicts do not openly admit their addiction, but they "slowly begin to come out of the woodwork" when they discover that treatment is available in their area. In support of TTC's CON application, TTC submitted a letter written by Nippert to SHPDA that stated that Watkins had informed him that there had been 62 arrests in the previous year related to the sale and possession of opiates in the Sumter County area.
Raymond Stevenson Flora, the regional director for Colonial, testified on behalf of Colonial in opposition to TTC's CON application. Flora testified that although he was not familiar with the Sumter County area, he was familiar with Colonial's methadone-treatment center in Montgomery; Flora testified that TTC's proposed facility could treat patients who use or might use Colonial's Montgomery methadone-treatment facility. Flora testified that Alabama has no specific methodology for determining the existence of a need for a methadone-treatment center and that there is no policy in Alabama requiring methadone-treatment facilities to refuse treatment to out-of-state residents. However, Flora stated that he did not think TTC's CON application demonstrated that there was a "substantial unmet public need" in Sumter County.
The ALJ's June 6, 2001, recommended order states, in pertinent part:
 "2. In accordance with Code of Alabama § 22-21-264, the award of a [CON] must be based upon a consideration and evaluation of certain minimum review criteria set forth in SHPDA [Reg.] 410-1-6-.01 et seq. Before granting a CON, the [CONRB] must first make a finding that the CON application is consistent with the appropriate State Health Plan, (e.g., the State Health Plan applicable to Methadone-treatment Facilities at [SHPDA Reg.] 410-2-4-.11(3); SHP at 84), and that there is a demonstration of a `substantially unmet public requirement' of need for the proposed services in the identified health service *Page 981 
area. Alabama Code § 22-21-264(4) and [SHPDA Reg.] 410-1-6-.02(1)(a).
 "3. Pursuant to [SHPDA Reg.] 410-1-3-.02(1)(a), SHPDA may seek `comment' from other state regulatory agencies when reviewing a CON application. According to [SHPDA Reg.] 410-1-6-.01(1)(b), the CON proposal shall be consistent with `additional criteria' prescribed by regulation adopted under state law as well as other applicable state and local requirements to which the proposal may be related.
 "4. In accordance with [SHPDA Reg.] 410-1-3-.02(1), SHPDA contacted the State Methadone Authority of Alabama Department of Mental Heath and Mental Retardation, which regulates opiate replacement treatment facilities, and requested [its] assistance `to provide criteria for review' of all the CON applications for opiate replacement treatment facilities.
 "5. SHPDA issued a Memorandum on August 17, 2000, to the Recipients of Letters of Intent for Opiate Replacement Facilities Entitled: Additional Criteria to Be Submitted with Certificate of Need Applications, which sets forth `suggested' information to be submitted with the CON application.[4] . . .
 "6. [SHPDA Reg.] 410-1-6-.05 requires that the need for the CON project be determined after giving appropriate consideration of evidence that the applicant's CON project proposal fulfills a substantially unmet public requirement of health need in the identified health service area. As stated in SHPDA [Reg.] 410-1-6-.05(1)(b) and 410-1-6-.06(1)(a), the applicant is also required to submit `specific data supporting the demonstration of need for the proposed facility or service, which supporting data shall be reasonable relevant and appropriate.'
 "7. No formal needs assessment, feasibility study or detailed need statistical analysis of any type was submitted by the [TTC] in the CON application . . . or [at] the hearing to support the need for the proposed facility. [TTC], however, submitted testimony at the contested case hearing that the need for the facility is based only on a combination of (1) personal anecdotal information; and (2) the personal testimony of two Tuscaloosa Clinic patients, one residing in Meridian, Mississippi, and one residing in Wilcox County, with no testimony from any potential patient for the propos[ed] medical service area, residing in or from [Livingston], Alabama, or [the] Sumter County area.
 "8. The anecdotal and personal opinions of testimony offered by [TTC's] witnesses remained unsupported by reasonable, relevant, and factual data. [TTC] and [its] supporting witnesses were unable to provide in any detailed or specific manner, a demonstrated substantial unmet public requirement of need in the identified health service area for the proposed project.
 "9. Despite inquiries from the [ALJ], who expressed concern on the record regarding the lack of supporting statistical information and data, [TTC] was unable to provide any data from Sumter County and the surrounding Alabama counties that demonstrated a `substantial unmet public requirement' of need in the identified medical service are for the proposed project. In fact, [TTC] and its supporting witnesses confirmed that only `a half dozen to ten patients' currently *Page 982 
receiving methadone services in [TTC's] Tuscaloosa facility are actually residing in the West Alabama counties identified in the CON application as the medical service area allegedly in need of a full service opiate replacement treatment facility. [TTC] and its supporting witnesses confirmed that patients, if any, in need of services in Sumter County would be from Mississippi and not Alabama residents or citizens. [TTC] also confirmed that heroin is not a problem in the state of Alabama and that opiate overdose rarely is a cause of death, even though opiate overdoses include all related opiate drugs, not just heroin.
 "10. Pursuant to Ala. Code § 22-21-234(4) and [SHPDA Reg.] 410-1-6-.02(1)(a), SHPDA is required to evaluate each CON application for consistency with the most recent SHP. The most recent Alabama SHP addresses methadone maintenance facilities but does not set forth a specific methodology for determining the need for additional opiate replacement treatment facilities in the State of Alabama. [SHPDA Reg.] 410-2-4-.11(3), SHP at 184. However, the current SHP does not set forth the Alabama State Health Planning public policy regarding Methadone Maintenance Facilities and the moratorium imposed by the Statewide Healthcare Coordinating Council in 1996.
 "11. The most recent SHP addresses Methadone Maintenance Facilities at [SHPDA Reg.] 410-2-4-.11(3). [TTC] agrees that the 1996-1999 State Health Plan is the most current plan.
 "12. The SHP expresses the current Alabama public policy concern of the proliferation of `border clinic' or clinics that have been `strategically located' along Alabama state lines to entice the pool of non-Alabama residents from neighboring states of Mississippi, Tennessee, Florida, and Georgia into Alabama for methadone treatment. . . . [TTC] admits that there are no opiate replacement treatment services available in Mississippi. [TTC] also readily admits that `patients will also come from Meridian, Mississippi' to the [Livingston] facility, because there are not services available in Meridian.
 "13. [TTC] and [TTC's medical director], Dr Kenneth E. Warner, admit that there are only `half a dozen to ten Alabama residents from the identified medical service area . . . attending its existing Tuscaloosa facility. Further, [TTC] admits that half of the current patients attending [TTC's] Tuscaloosa Treatment Center (approximately one half of 180 patients or 90 patients) are from outside the Tuscaloosa area. Of that amount, approximately one-half (45) are from the Meridian/Philadelphia, Mississippi area.
"C. Conclusions of Law
 "Based on the foregoing factual findings, as well as the additional facts reflected in the certified record, and the transcript as a whole, and the application of theses facts to the controlling legal principals found in the CON law, the SHPDA rules, the SHP, and administrative and court decisions regarding said laws and regulations, the following conclusions of law are hereby recommended by the undersigned ALJ to the [CONRB] for incorporation into a final order of the [CONRB] regarding [TTC's CON application].
". . . .
 "7. [TTC failed to meet its burden] to produce evidence to address each review criterion and standard set forth in § 22-21-260 et seq., Ala. Code 1975, and specifically in [SHPDA Reg.] 410-1-6-.01 *Page 983 
through -.18, and each sub-part of said criterion. [TTC] fail[ed] to provide any demonstrative evidence of a substantial unmet public requirement of need for the proposed CON project based on specific data supporting the need in Alabama for a full service opiate replacement treatment facility in Sumter County, Alabama, to serve the public interest of Alabama and Alabama residents, and therefore, [TTC's CON application] should be denied.
 "8. [TTC's CON application] is inconsistent with the policies stated in the current Alabama State Health Plan in that the Applicant admits that the project has been strategically located near the Alabama/Mississippi State line to serve residents from Meridian, Mississippi, who may be in need of such service, and, therefore, [TTC's CON application] should be denied."
(Emphasis original; footnotes omitted.)
In rejecting the ALJ's recommendation, the CONRB July 31, 2001, order states, in part:
 "3. In essence, the ALJ recommended denial of the application due to the absence of statistical evidence which would support a finding of substantially unmet community need for the proposal and [the ALJ's] conclusion that the proposal was inconsistent with the State Health Plan (SHP) because the proposed location of the facility is in relative proximity to Mississippi.
 "4. The primary service area for this project is Sumter County and with the secondary service comprising the surrounding counties of Greene, Marengo and Choctaw.
 "5. The 1996-1999 SHP addresses methadone-treatment facilities in [SHPDA Reg.] 410-1-4-.11 but does not provide a specific numerical formula for determining need for outpatient treatment in an Opiate Replacement Facility. Due to `proliferation' of outpatient clinics close to the border of neighboring states, a two-year moratorium was imposed on new clinics on July 25, 1996. The moratorium has expired without the adoption of specific numerical need methodology.
 "6. Based on the totality of the evidence presented to the Board, it finds that there exists substantial evidence of an unmet community need for the proposal.
 "7. The Board has carefully considered the location of the proposed facility and the evidence regarding its likely patient base. Concerns about outpatients facilities being located close to adjoining states so as to attract clients from said states does not equate to an outright prohibition against a clinic being located in the vicinity of an adjoining state line. Further, the 1996 moratorium adopted, in part, to address such concerns expired approximately three years ago.
 "9. The applicant received letters of support from the District Attorney and local hospital administrators, demonstrating local support for the project notwithstanding the fact that some out-of-state patients may be treated.
 "10. The Board received suggested review criteria submitted by the Methadone Advisory Committee for outpatient treatment in an Opiate Replacement Facility. The Board has not considered the methodology submitted by the Methadone Advisory Committee as separate criteria for the issuance fo a CON. It has, however, examined all `reasonable, relevant, and appropriate' information to determine whether existing statutory and administrative criteria have been met, including, but not limited to, evidence of the locational appropriateness of the proposed facility and the *Page 984 
reasonable potential of the facility to meet licensure standards."
In its July 31, 2001, order, the CONRB further found that based on its examination of all of the "reasonable, relevant, and appropriate" information submitted by TTC, a substantially unmet community need existed for TTC's proposed methadone-treatment facility in Sumter County.
On appeal, Colonial continues to argue that the CONRB's decision is not supported by substantial evidence because TTC failed to present statistical data demonstrating an unmet community need. However, there are no relevant statutory provisions or administrative regulations requiring TTC to submit specific statistical data in support of its CON application. The relevant provisions provide that "specific data" submitted by a CON applicant be "reasonable, relevant and appropriate."See § 22-21-264(4)(b), Ala. Code 1975 and SHPDA Reg. 410-1-6-.05. Although the 1996-1999 SHP included statements regarding the State's concern of the placement of methadone-treatment facilities near Alabama's borders and the need to establish a methodology to determine whether a need exists in a certain area for the placement of a facility, the moratorium imposed by that section has expired and no methodology for determining the necessity of methadone treatment facilities was ever established.
This court must view the CONRB's July 31, 2001, order as "prima facie just and reasonable." See § 41-22-20(k), Ala. Code 1975. Further, neither this court nor the trial court is permitted to "substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." § 41-22-20(k); State Health Planning Dev.Agency v. Baptist Health Sys., Inc., 766 So.2d at 178. "This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result."Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d at 975. Given the evidence, this court might well have reached a different result than that the CONRB reached. However, this court cannot say that the CONRB erred in concluding that TTC's CON application was supported by evidence of a "substantially unmet public requirement for the proposed health-care facility." Further, this court cannot say that the CONRB's conclusion that TTC's CON application was supported by evidence of a "substantially unmet public requirement" was arbitrary, capricious, or not in compliance with applicable law. See §41-22-20(k), Ala. Code 1975; Alabama Renal Stone Institute, Inc. v.Statewide Health Coordinating Council, supra.
Colonial has failed to demonstrate that the trial court's judgment affirming the CONRB's decision was arbitrary, capricious, or contrary to applicable law. The decision of the trial court is affirmed.
AFFIRMED.
Yates, P.J., and Crawley, Pittman, and Murdock, JJ., concur.
[1] Section 22-21-260(13), Ala. Code 1975.
[2] The parties do not dispute that the 1996-1999 SHP is the applicable current SHP.
[3] The State Health Coordinating Council is an appointed board that, among other things, is responsible for drafting and revising the SHP.
[4] After receiving a request from SHPDA, the State Methadone Authority sent a letter to SHPDA suggesting certain data for the CONRB to consider, including statistical data, in support of a CON application to establish a methadone-treatment facility.