PITTMAN, Judge.
’ In appeal number 2131Ó22, Hometown Home Health[1] Care of Shelby County, LLC (“Hométown Shelby”),’ appeals from a decision of the Certificate of Need Review Board (“the CONRB”) of the State Health Planning and Development Agency (“SHPDA”) insofar as it (1) denied Hometown Shelby’s application for a certificate of need (“CON”) authorizing it to establish a new’ home-health agency in Shelby County and (2) granted-the competing application of Partners Healthcare Group, LLC *46 (“Partners”),; for a CON authorizing it to establish such an agency in Shelby County. In appeal number 2131050, Gentiva Health Services, Inc. (“Gentiva”), appeals from the same decision insofar as it granted Partners’ application. We consolidated the appeals on the motion of SHPDA.,
In 2013, Hometown Shelby,. Partners, and Saad Héalthcare Services of Shelby County (“Saad”) each filed an application for a CON authorizing it to establish a home-health agency in Shelby County. Amedisys Home Health, Inc. of Alabama (“Amedisys”) and Gentiva, who were already providing home-health services in Shelby County, each intervened in the SHPDA proceedings relating to those three CON applications in order to oppose them. Hometown Shelby filed its opposition to Partners’ and Saad’s applications, and Saad filed its opposition to Hometown Shelby’s and'Partners’ applications.
The three competing applications of Hometown Shelby, Partnérs, and Saad were “batched” pursuant to Ala. Admin. Code (SHPDA), Rule 410-1-7-,19.[1] After several of the parties requested a contested-case hearing, Terry L. Butts was appointed as an administrative-Mw judge (“the ALJ”) to conduct a contested-case hearing in which he would hear evidence supporting and opposing all three of the batched applications. Thereafter, the ALJ held the contested-case.hearing over a period of four days in December 2013. The ALJ subsequently issued a recommended order in May 2014 in which he found that there was an unmet need for home-health services in Shelby County, found that the unmet need justified the granting of all three applications, found that all three of the applicants were appropriate applicants who satisfied all the CON review criteria, and recommended that all three, applications be granted. .
All the parties filed exceptions to the ALJ’s recommended order, which the CONRB reviewed along with the ALJ’s recommended order and the record of the contested-case hearing. The CONRB then held a public hearing on June 18, 2014. After the parties had been heard at that public hearing, a member of the CONRB'' made a motion that the ALJ’s recommended order be approved in its entirety and that all three applications be granted. After the motion was seconded, another member of the CONRB stated that, in his opinion, SHPDA’s rules prohibited the granting of more than one application at a time. The CONRB then voted on the motion to approve the ALJ’s recommended order in its entirety and to grant all three applications. Four of the eight members of the CONRB who were present voted in favor of approving the motion, and four voted against it. Because the CONRB’s procedural rules required a favorable vote of a majority of the members who were present for approval of a motion, the motion was not approved.
One of the members of the CONRB then stated that he agreed with the ALJ’s finding that all three applicants were appropriate applicants but that he disagreed with the ALJ’s conclusion that more than one application could be granted at once. Thereafter, he made a motion to grant only Partners’ application on the ground that Partners was the most appropriate of the three applicants. After that motion was seconded, four members voted in favor of it, and four voted against it. Because a majority of the members who were pres *47 ent did not vote in favor of it, that motion was not approved. Thereafter, a member moved to deny all three applications. After that motion was seconded, five members voted in favor of it, and, accordingly, it was approved.
Further discussion ensued among the members following the approval of that motion, and a suggestion was made that the CONRB reconsider that motion. At that point, Amedisys’s counsel objected to the CONRB’s reconsidering that motion because, he said, under the CONRB’s procedural rules, a motion that had been approved could not be reconsidered at the same meeting at which it had been approved. The CONRB then decided to reconsider the motion at a later meeting if it received an application for reconsideration, and it adjourned.
Hometown Shelby, Partners, and Saad then filed -a joint request for reconsideration,-which the CONRB granted. The CONRB held another public hearing on August 20, 2014, which resulted in the CONRB’s voting to approve the ALJ’s recommended order insofar as he had found that a need for a new home-health agency in Shelby County existed, to approve the ALJ’s recommended order insofar as he had found that Partners was ah appropriate applicant who satisfied all the CON criteria, to reject the ALJ’s recommended order insofar as he had concluded that all three applications could be granted at once,' to grant Partners’ application because Partners was the most appropriate, applicant, and to deny Hometown Shelby’s and Saad’s applications. Subsequently, on September 4, 2014, the CONRB issued a written decision (“the CONRB’s September 4, 2014, decision”) stating, in pertinent part:
- “At the August -20, 2014 hearing on reconsideration,’ following oral -. argument, the Board ■ voted to. adopt the ALJ’s Recommended Order, in part, and reject it, in part. Specifically, the Board adopts that portion of the ALJ’s findings and conclusions recognizing the need for a new. home health agency in ■ Shelby County-and Partners’ qualifications and compliance with applicable CON . criteria, while rejecting .the ALJ’s finding that the State Health Plan and SHPDA’s administrative rules authorize the grant of more than one new home health agency in this case.- ■ The Board.also finds, based on [the] totality of [the] evidence, that Partners is the superior, most appropriate applicant and its application should thus be granted, and the applications of Hometown Shelby-, and [Saad] should thus be denied. The Board notes the evidence in this record of Partners’ professional, financial and managerial capability,- its innovative and forward looking business model, and its patient projections. v
“Therefore, based upon the forgoing, the totality of the evidence presented, as well as the oral arguments of counsel for the parties, the application of Partners Healthcare Group, LLC, ... Project No. AL2013-049, is hereby APPROVED, and the applications of Saad Healthcare Services of Shelby County, LLC, Project No. AL2013-054, and Hometown Home Health Care of Shelby County, LLC, Project No. AL2013-039, are hereby DENIED.”
Subsequently, Hometown'Shelby and Gentiva timely appealed from the CONRB’s decision to this court.[2] We then consolidated the appeals on the motion of SHPDA. ,
*48 “Under the- Alabama Administrative Procedure Act (‘AAPA’), § 41-22-1 et seq., Ala.Code 1975, which governs judicial review of agency decisions,- -
“ ‘[ejxcept where judicial review is by .trial de novó, the agency order shall be taken as prima facie just and; reasonable and the court shall not substitute its judgment for that of the agency as 4o the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from agency action, equitable .or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in. appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because, the agency action is any one or more of the following:
“ ‘(1) In violation of constitutional or statutory provisions;
“ ‘(2) In excess of the statutory authority of the agency;
‘(3) In violation of any pertinent agency rule;
. “‘(4) Made upon unlawful procedure; ■ ....
“ ‘(5) Affected by other'error of law;
“‘(6) Clearly erroneous 'in view of the reliable, probative, and substantial evidence on the whole record; or '
'“‘(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.’
“ § 41-22-20(k), Ala.Code 19.75 (emphasis added). In reviewing the decision of a state administrative agency, ‘[t]he special competence of the' agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not-made in compliance with applicable law.’ Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993). ‘The weight or importance assigned to any 'given piece of evidence presented in a CON application is left primarily to the [CONRB’s] discretion, in light of the [CONRB’s] recognized expertise in dealing with these specialized areas.’ State Health Planning & Dev. Agency v. Baptist Health Sys., Inc., 766 So.2d 176, 178 (Ala.Civ.App.1999). Neither .this court nor the trial court may substitute its judgment for that of the administrativé agency. Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993). ‘This holds true even -in cases where the testimony is generalized, the evidence is meager, and reasonable' minds -might differ as ,to the .correct result.’ Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d 973, 975 (Ala.Civ.App. 1989). Further, ‘an agency’s interpretation of its own rule or regulation must stand if it is .reasonable, even though it may not appear as reasonable as some other interpretation.’ Sylacauga Health Care Ctr., Inc. v. Alabama State Health Planning Agency, 662 So.2d 265, 268 (Ala.Civ.App.1994).”
Colonial Mgmt. Grp., L.P. v. State Health Planning & Dev. Agency, 853 So.2d 972, 974-75 (Ala.Civ.App.2002).
Both Hometown Shelby and Genti-va argue that the CONRB’s September 4, 2014, decision is arbitrary and capricious because, they say, it is- in direct conflict *49 with a June 5, 2014, decision of the CONRB (“the CONRB’s June 5, 2014, decision”) regarding applications filed by Hometown Home Health Care of Baldwin County, LLC (“Hometown Baldwin”); Ala-care Home Health Services, Inc. (“Ala-care”); and Partners for CONs authorizing them to establish new home-health agencies in Baldwin County. In the CONRB’s Juné 5, 2014, decision, it stated, in pertinent part:
“On April 18, 20Í4, the assigned Administrative Law Judge (‘ALJ’) issued a Recommended Order from Contested Case Hearing (‘Recommended Order’), recommending the grant of Hometown Baldwin’s and Alacare’s applications and the denial of Partners’ CON application. Exceptions were filed by Gentiva, LHC, Amedisys, Alacare and Partners on April,25, 2014. The Board heard oral arguments on May 21,2014,
“On. May 21, 2014, the. Board.voted to adopt the ALJ’s Recommended Order, in part, and reject it, in part. Specifically, the Board adopts that portion of the ALJ’s findings and conclusions recognizing the need for a new home health agency in Baldwin County and Hometown Baldwin’s qualifications and compliance with applicable CON criteria, while rejecting the ALJ’s finding that the State Health Plan and SHPDA’s administrative rules authorize the grant of more than one new home health agency in this case. The Board also finds, based on [the] totality of [the] evidence, that Hometown Baldwin is the superior, most appropriate applicant and its application should thus be granted, and the applications of Alacare and Partners should thus be denied. In identifying Hometown Baldwin as the superior applicant, the Board notes the evidence in this record of its professional, financial, and managerial capability and widespread community support, experience and contacts in 'the Baldwin County area.
“Therefore, based upon the foregoing, the totality of the evidence presented, ás well as the oral arguments of counsel for the parties, the application of Hometown Home Health Care of Baldwin County, LLC, Project No. AL20Í3-038, is hereby APPROVED, and the applications of Alacare Home Health Services, Inc., Project No. AL2013-047, and Partners Healthcare Group, LLC, Project ,No. AL2013-050, are hereby DENIED.”
(Emphasis added.)
Hometown Shelby and Gentiva argue that the CONRB’s September 14, 2014, decision is in direct conflict with its June 5, 2014, decision because, they’ say, the CONRB found in its June "5,2014,’ decision that Partners was not an appropriate applicant'because it had failed'to satisfy all the CON criteria, whereas, based on essentially the same evidence, it found in its September 4, 2014, decision that Partners not onfy satisfied all the CON criteria but also was the most appropriate of the three applicants. According to Hometown. Shelby and Gentiva, the CONRB reached diametrically opposed decisions in its Juné 5, 2014, and September 4, 2014, decisions based on essentially the same evidence and, therefore, its September 4, 2014, decision is necessarily arbitrary and capricious.
It is true that the same ALJ heard the evidence in both the contested-case hearing that ultimately resulted in the CONRB’s June 5, 2014, decision and the contested-case, hearing that ultimately resulted in the CONRB’s September 4, 2014, decision. It is also true that, in his recommended order that was before the CONRB when it reached its June . 5, 2014, decision, the ALJ found that Partners had failed to satisfy all the CON criteria, whereas,-.in *50 his recommended -order that was before the CONRB when it reached its September 4, 2014, decision, he found that Partners had satisfied all the CON criteria. Moreover, it is true that much of the evidence presented in the two contested-case hearings was the same. However, in its June 5, 2014,,decision, the CONRB did not adopt the ALJ’s recommended order insofar as he had found that Partners had not satisfied all the CON criteria; rather, it denied Partners’ application for a CON in Baldwin County because it concluded that only one of the three batched applications for a CON in Baldwin County could be granted, and that, based on the totality of the evidence, Hometown Baldwin was the most appropriate of the three applicants. By denying Partners’ application on those grounds, the CONRB, in its June 5, 2014, decision, implicitly rejected the ALJ’s recommended order insofar as he found that Partners had not satisfied all the CON criteria. In its September 4, 2014, decision, the CONRB expressly adopted the ALJ’s recommended order insofar as he found that Partners had satisfied all the CON criteria. Thus, although the recommended order, of the ALJ regarding the CON applications for Baldwin County and his recommended order regarding the CON applications for Shelby County were in conflict regarding whether Partners had satisfied all the CON criteria, the CONRB’s June 5, 2014, and September 4, 2014, decisions were not in conflict regarding that issue.
Moreover, the CONRB’s September 4, 2014, decision to grant Partners’ application for a CON in Shelby County is not arbitrary and capricious insofar as the CONRB found that Partners was the most appropriate applicant for a CON in Shelby County because only Partners presented evidence indicating that it could meet all of Shelby County’s unmet need for home-health services within one year. Thus, the CONRB’s decision that Partners was the most appropriate applicant for a CON in Shelby County is supported by substantial evidence. Consequently, we reject Hometown Shelby and Gentiva’s argument that the CONRfe’s September 4, 2014, decision was in direct conflict with its June 5, 2014, decision:
Hometown Shelby also argues that the CONRB’s finding that Partners had satisfied the criteria for granting a CON application is . clearly erroneous because, Hometown Shelby says, Partners failed to establish that it would contribute to meeting the needs of the medically under-served in the area. In pertinent part, the State Health Plan (“the SHP”) provides:
“Home health agencies that achieve or agree to achieve Charity Care plus Self Pay at the statewide average percent for all home health'providers shall be given favorable CON consideration over home he'alth applicants that do not achieve or agree to achieve the statewide average for Charity Care plus Self Pay, but not less than one (1) percent.”
(Emphasis added.) Hometown Shelby argues that Partners failed to agree to satisfy that provision of the SHP. However, Robert Radies, the chief executive officer of Partners, testified:
“Q. [By Partners’ counsel:] Okay. And finally, on the next page, [Ala. Admin. Code (SHPDA), Rule 410-2-4-.07](6)(c)4. is the provision that gives favorable CON consideration for agreeing to achieve the statewide average for charity care plus self-pay, but not less than 1 percent.
“So if you wouldj discuss with us your application’s — or your company’s ability meet the Planning Policy 4 and whether or not you agree to achieve that goal.
*51 “A. We do agree to achieve the goal. And our application, I know, in year one had the charity care alone at 1.08 percent. So we’re confident we’ll be able to meet the requirement when you add in the self-pay percent on top of the charity care.”
Accordingly, substantial evidence indicates that Partners did indeed agree to satisfy that provision of the SHP. Consequently, we reject Hometown Shelby’s argument.
Gentiva argues that the CONRB’s decision to grant Partners’ CON application is clearly erroneous because, Gentiva says, the evidence before the CONRB did not satisfy the community-need criterion that a CON application must 'satisfy. See § 22-21-264(4), Ala.Code 1975;[3] Ala. Admin. Code (SHPDA), Rule 410-1-6-.05;[4] and Ala; Admin. Code (SHPDA), Rule 410-1-6-.06.[5] Specifically, Gentiva argues that the - evidence established that, as of the date of the contested-case hearing, there was no actual, existing unmet community need for home-health' services in Shelby Gounty and that the CONRB erred in relying on population projections to determine whether there was an unmet need for such services in -that county. In effect, Gentiva is arguing that Partners could establish the existence of an unmet community need for an additional home-health agency in Shelby County only if it presented evidence indicating that it had canvassed Shelby County and identified specific individuals whose need for home-health services were not being met by the home-health agencies already providing *52 such services in Shélby County. However, there are no relevant statutory provisions or administrative regulations requiring a CON applicant to present any particular type of evidence in order to establish the existence of an unmet community need for a health-care service. See Alacare Home Health Servs., Inc. v. State Health Planning & Dev. Agency, 27 So.3d 1267, 1277 (Ala.Civ.App.2009) (“Alacare is correct in arguing that Rule 410 — 1—6—.05(l)(b)[,. Ala. Admin.. Code (SHPDA),] and Colonial [Management Group, L.P. v. State Health Planning and Development Agency, 853 So.2d 972 (Ala.Civ.App.2002),] do hot mandate that a. CON applicant present any particular type of ‘specific data’ in .order to establish an unmet need.”). The CONRB “adopt[ed] that portion of the ALJ’s findings and conclusions recognizing the need for a new home health agency.in Shelby County.” The ALJ found that an unmet community need' for a new home-health agency existed in Shelby County based on the mathematical methodology specified by the -SHP for determining whether such a need existed, SHPDA’s November 2012 Statistical Update,- and population-growth projections for each county in Alabama through the year 2040. Regarding the population-growth projections, the ALJ stated: •
“The need in Shelby County is being generated by the explosion in all population age groups and particularly the aged 65 and older demographic. Shelby County is the fastest, or second fastest, growing county in the state, depending on which cohort is examined. Shelby County is the fastest growing county in the Stgte in terms of its senior population, the age cohort most applicable to home health. From 2010 to 2040 Shelby County’s overall population will grow by 64%, and in the cohort relevant most to home health, senior population, the county is projected to grow 249%. Shelby County’s senior population and its use of home health services are far outpacing the rest of the State." Home health care needs in Shelby County have increased significantly in the last 15 years, by one measure (2001-2009), 141%. In comparison, the growth rate for use-of home health for the State of Alabama- at-large was' 64%: Shelby County needs' additional home health services more than nearly any. other county in- the State.. The need for an additional home health service in Shelby County is well documented, demonstrated, acknowledged by the. opposition, and easily verifiable under the State Health Plan. Shelby County has experienced, and will continue to experience, explosive growth and this growth has already placed a severe strain on the existing health care system, and there is a need for additional home health services in the county. This is corroborated by the population' census data admitted into evidence. In addition, a new home health provider has not been approved for Shelby County in over a decade, when the population of the county was significantly less than it is today.”
Thus, the finding of the CONRB that there is an unmet community need for an additional home-health agency in Shelby County is supported by substantial evidence.
Gentiva and Amedisys presented evidence tending to prove that there was no actual unmet need for home-health services in Shelby County;' however, the ALJ did not find that evidence persuasive. Regarding that evidence, the ALJ stated: “The witnesses for Amedisys and Gentiva presented only limited anecdotal personal opinion evidence or information based on a very limited number of discussions with certain, often self-interested, Shelby County individuals to.support their argument of *53 no need.” This court cannot substitute its judgment for that of the CONRB regarding the weight to be assigned to any given piece of evidence. See Alacare, 27 So.3d at 1278; and Colonial, 853 So.2d at 975. Accordingly, we reject Gentiva’s argument that the evidence before the CONRB did not establish the existence of an unmet community need for an additional home-health agency in Shelby County.
Gentiva next argues that the CONRB failed to consider the availability of less costly, more efficient, more appropriate, dr more effective alternative methods of providing home-health services • in Shelby County. Rulé 410 — 1—6—.04(1), Ala. Admin. Code (SHPDA), requires the CONRB to consider the “availability of less costly, more efficient, more appropriate, or more effective alternatives to the proposed facility or service to be offered,” giving priority to existing alternatives -and judging less costly alternatives against the need for “greater accessibility, availability and the impact on the total health care system.” Applying the requirements of Rule 410-1-6-.04(l) to the evidence in the record, the pertinent portion of the ALJ’s' recommended order that was adopted by the CONRB stated:
“Approving ... Partners’ Application ] is also the best alternative because ... Partners will help invigorate the home health market in Shelby County. Shelby County is ripe for a new home health agency as it has been over a decade since a home health agency was approved for the county. And, 14 of the 19 active home health agencies serving patients in Shelby County are controlled by four companies, three of which are large, publicly traded companies. The need pool is thereby in the hands of those companies, and recently [two of] those very companies, ... Gen-tiva and Amedisys, are shutting offices and laying off employees' around the country.. : • ,
“The ALJ further finds that there are no more feasible, less costly, more efficient, or - more effective alternatives to the project[ ] proposed by ... Partners— And since the purpose of the State Health Plan is ‘to assure’ that home health services remain available, accessible, and affordable to residents of the county by identifying counties in which an additional home health agency is needed, the State Health Plan identifies Shelby County as needing additional home health services.” • •
As evidenced by the findings of the ALJ quoted above, the CONRB did indeed consider the factors prescribed by Rule 410-1 — 6—.04(1); therefore, we reject Gentiva’s argument that the CONRB failed to consider them.
Finally, Gentiva. argues that the CONRB’s decision to grant Partners’ application is clearly erroneous because, Gen-tiva says, Partners failed to establish that the authorization of a new home-health agency in Shelby County would not have a detrimental effect on the agencies already authorized to provide home-heaith services in Shelby County. In pertinent part, Ala. Admin. Code (SHPDA), Rule 410-1-6-.06(l)(e), provides:
“The probable effect of the proposed facility or service on existing facilities or services providing similar services-to those proposed shall be considered. When the service area of the proposed facility or service overlaps the service area of .an existing ..facility or service, then the effect on the existing facility or service shall be considered. The applicant or interested .party must clearly present the methodologies, and assumptions upon which any proposed project’s impact on utilization in affected facilities or services is calculated.”
*54 The pertinent portion of the ALJ’s recommended order adopted by the CONRB stated: .
“[I]n determining whether there is a need for another home health agency in a particular county, the formula used by SHPDA identifies only the absolute need in order to avoid a detrimental impact on existing home health care providers. In fact, the need methodology formula used by SHPDA protects existing providers by identifying a true need after a substantial portion of the new patients has been apportioned to existing providers. Thus, the formula identifies additional new patients; but, out of the new patients identified, two-thirds are automatically allocated to existing providers.
“Based on its most recent updates, SHPDA has reported that there is a need for additional home health services in Shelby County. Under the State Health Plan, 67 percent of new patients are automatically allocated to the county’s existing providers. Nonetheless, there remain 295 new patients to be served. The State Health Plan identifies the need for additional home health agencies only after the number of unallocated patients exceeds one hundred. The number of unallocated patients in Shelby County is 295; therefore, there is a substantial need under the' State Health Plan that is essentially three times what would justify the need for one agency.
“The new home health agencies in Shelby County can employ skilled nurses without causing a detrimental effect to the existing providers in' Shelby County. Between 2005 and 2010; the growth in the nursing profession was higher than in any five-year period in the past forty years and Alabama has more nurses per 100,000 residents than the national average.
“The ALJ finds that ... Partners’ ... Application ] and proposed projeet[] satisfy, and are fully consistent with, r. 410-1-6-.06 of the CON review criteria. The need methodology used in the State Health Plan identifies absolute need so there will not be a negative effect on existing home health care providers in the county. In fact, the need methodology formula used by the State Health Plan protects existing providers by identifying a true need only after a significant portion of the new . patients has been set. aside for existing providers. Furthermore, since all care is provided in the home, .... Partners ... will not compete with health care facilities or fixed-based providers. By awarding [a] CON[ ] to ... Partners ..., any serious problems in obtaining home health care for the citizens of Shelby County can be avoided. Avoiding such problems is the purpose of the State Health Plan’s home health need methodology, which has identified Shelby County as needing additional home health agency services.
[[Image here]]
“As discussed above, Shelby County is one of the fastest growing counties in Alabama. Despite this significant population growth in Shelby County, no CON has been awarded for a new home health agency to provide home health services in Shelby County in over a decade. Demographic characteristics and the population growth in Shelby County require due consideration, as they further support the clear, definitive, and unambiguous need in Shelby County for new home health agency services to address the State Health Plan need determination.
“Despite the clear and definitive need for a new Shelby County home health agency identified in the November 2012 *55 Statistical" Update, however, Amedisys and Gentiva argued that approval of a CON for Shelby County would adversely impact existing Shelby County home health agencies because there is not an actual need in Shelby County for a new home health agency, only a statistical need. Gentiva and Amedisys make these arguments notwithstanding the exploding population growth in Shelby County; the significant level of growth for existing home health providers already factored in the State Health Plan need formula; and, a threshold in excess of that factored growth equal' to or greater than a huridred new patients to be served in the county before a need is determined [to exist] under the State Health Plan.
“The witnesses for ' Amedisys and Gentiva, presented only limited anecdotal personal opinion evidence or information based on a very limited number of discussions with certain, often self-interested, Shelby County individuals to support their argument of no need. There is no evidence, as is required under Ala. Admin. Code r. 41O-l-6-.06(l)(e) for the showing of an adverse impact, that any of these existing Shelby County home health agencies conducted any type of comprehensive survey, independent scientific ■ analysis, or. statistical study to confirm that the November 2012 Statistical Update is inaccurate. There is also no evidence that any of these existing Shelby County home health. agencies sought an adjustment to the November 2012 Statistical Update from the [Statewide Health Coordinating Committee], as is allowed under Ala. Admin. Code r. 410-2-5-.04.
“Again, no CON has been awarded for a new home health agency in Shelby County in over a decade and there is only one home health agency with an office in Shelby County. Under the current State Health Plan need methodology, however, ;there is a clear and definitive need for additional home health services in Shelby County. Therefore, the existing Shelby County home health agencies are evidently not meeting, the need for home health services.
“... Partners ... presented evidence that [its] project[ ] will not have an' adverse impact on existing Shelby County home health agencies. The State Health Plan, as amended effective January 20, 2009,. and the November 2012 Statistical Update, identifies 295 under-served persons in Shelby County. (Ala. Admin. Code r. 410-2-4-.07). Given the clear and definitive need in Shelby County for a new home health agency to serve 295 persons, ..... Partners’ ... projectt ] would not adversely impact existing Shelby County home health, agencies.”
The ALJ’s findings are supported by substantial evidence, and we cannot substitute our judgment for that of the CONRB regarding the weight, to be. assigned to any given piece of evidence. See Alacare, 27 So.3d at 1278; and Colonial, 853 So.2d at 975. Therefore, we reject Gentiva’s argument that Partners failed to establish that the authorization of a new home-health agency in Shelby County would not have a detrimental effect on the'agencies already authorized to provide home-health services in Shelby County.
Because we do not find merit in any of Hometown Shelby’s and Gentiva’s arguments, we affirm the CONRB’s September 4,2014, decision.
AFFIRMED.
THOMPSON, P.J., and MOORE and DONALDSON, JJ¡, concur.
THOMAS, J., concurs specially.

. "Batching is .the formal review in the same 90-day review cycle and comparative consideration of all completed applications pertaining to similar types of services, facilities, or equipment affecting the same health service area." Ala. Admin. Code (SHPDA), Rule 410 — 1—7—.19(1).

. Alabama Code 1975, § 22-21-275(6), provides that a party aggrieved by a final decision of SHPDA may appeal to this court within 21 days, after the decision becomes final.

. In pertinent part, § 22-21-264 provides:
"The SHPDA, pursuant to the provisions of Section 22-21-274, [Ala.Code 1975,] shall prescribe by rules and regulations the criteria and clarifying definitions for reviews covered by this article. These criteria shall include at least the following:
[[Image here]]
"(4) Determination of a substantially unmet public requirement for the proposed health care ... service ... that is consistent with orderly planning within the state and the community for furnishing comprehensive health care_”

. In pertinent part, Rule 410-1-6-.05 provides:
"(1) Determination of a substantially unmet public requirement for the proposed health care facility, service, or capital expenditure shall be made before approval may'be granted. The need shall be consistent with orderly planning within the state and community for furnishing comprehensive health care."

. . In pertinent part, Rule 410-1-6-.06 provides:
“(1) The following criteria shall be considered in determining whether a need for the project exists, which criteria shall be in addition to the criteria set forth in Section 410-1-6-.05[, Ala. Admin. Code (SHPDA) ]:
"(a) The need that the population served or to be served has for the services proposed to be offered, expanded, or relocated, will be considered. Specific data supporting the demonstration of need shall be reasonable] relevant, and appropriate....
' "(b) Population Statistics and Growth. Unless clearly shown otherwise, current population estimates or projections published by the Center for Business and Economic Research, University of Alabama, and data from the SHPDA Division of Data Management will be considered to be the most reliable data available. Population factors are normally included within those methodologies -contained in the State Health Plan for determining need.
"(c) Current and Projected Utilization in the Area. The current and projected utilization of like facilities or .services within the proposed service area will be considered in determining the need-for additional facilities or services. Unless clearly shown, otherwise, data, wl^ere .available from the SHPDA Division of Data Management shall bé considered to be the most reliable data availáble,
"1, Current and projected utilization may be expressed .in the State Health Plan as a guideline to the SHPDA Board'. Where such is the case, the SHPDA Board should give due consideration to the guidelines.”