This is an appeal involving competing applications for a Certificate of Need (CON) to operate additional nursing home beds in Talladega County.
The first applicant, Sylacauga Health Care Center, Inc. (Sylacauga), filed its application with the Alabama State Health Planning and Development Agency (SHPDA), requesting approval for the construction and operation of 25 additional skilled nursing facility (SNF) beds for its facility in Talladega County. The estimated cost for the new construction averaged approximately $7,000 per bed.
The second applicant, Sylacauga Health Care Authority, Inc., d/b/a Coosa Valley Medical Center (Coosa Valley), filed its application with SHPDA, requesting approval for the reduction of its licensed acute care bed capacity by 26 beds, to be replaced by 26 (SNF) beds. The bed conversion was proposed to be accomplished through the use of existing hospital space, with insubstantial renovations being required within the existing hospital. The estimated cost for the conversion was approximately $2,500 per bed.
The third applicant, Talladega Nursing Home, Inc. (Talladega), requested approval for the addition of 12 new (SNF) beds to its existing facility. The application called for the renovation of existing space within the facility. The estimated cost for the conversion was approximately $2,567 per bed.
At the time the applications were filed, there was a total of 26 nursing home beds available in the State Health Plan for applicants in Talladega County.
This case has a lengthy procedural history. The initial proceedings are not germane to the disposition of this appeal and will not be dwelt upon. We begin our procedural analysis with the "contested case hearing."
Following the reception and consideration of all the relevant testimony and evidence, the administrative law judge issued his Report and Recommended Order on Contested Case Proceedings. It suggested that twelve beds be awarded to Talladega, fourteen beds be awarded to Coosa Valley, and no beds be awarded to Sylacauga.
The SHPDA CON Review Board (Board) adopted the recommendations of the administrative law judge. Sylacauga gave timely notice of fair hearing as to the award to Coosa Valley and the denial of any beds to Sylacauga. The fair hearing officer affirmed the decision of the Board.
Sylacauga filed a notice of appeal in the Circuit Court of Montgomery County. The trial court heard oral argument and considered the record and additional briefs. The trial court entered an order, affirming the decision of the Board. Sylacauga appeals.
Sylacauga concedes that Talladega was properly awarded its CON. It asserts that the Board erred in denying its requested CON and in granting Coosa Valley's requested CON.
Section 22-21-266(2), Code 1975, provides that a CON cannot be awarded for inpatient facilities or service unless it is established "[t]hat less costly, more efficient or more appropriate alternatives to such inpatient service are not available, and that the development of such alternatives has been studied and found not practicable."
Sylacauga contends that it presented the more appropriate, more efficient, least expensive *Page 267 
plan under the standards mandated by § 22-21-266(2), Code 1975.
The record reflects that Sylacauga's request required new construction that would cost approximately $7,000 per bed. Coosa Valley's conversion cost from its acute care beds to its requested SNF beds would cost approximately $2,500 per bed. The per diem cost of caring for patients at Sylacauga, however, was substantially less than that of Coosa Valley. The most recent figures showed that Sylacauga's Medicaid costs had been $40.33 per day, while Coosa Valley's had been $60.81 per day.
Sylacauga contends that it should have been awarded the comparative CON because the undisputed evidence showed that its projected, per diem operational costs were significantly less than Coosa Valley's projected operational costs.
Coosa Valley, relying upon a SHPDA planning policy, contends that its request was properly given priority over Sylacauga's because its "start-up" cost or "conversion" cost was significantly less than Sylacauga's. That planning policy provides the following: "Conversion of existing hospital beds to nursing home beds should be given priority consideration over new construction when the conversion is significantly less costly and the existing structure can meet licensure and certification requirements."
The issue before the Board was whether the planning policy in question was intended to relate only to the actual conversion costs or whether it included the total per patient operating costs in the future.
In reaching its conclusion that the planning policy should be interpreted as including only a comparison of the actual conversion costs, the Board found the following:
 "18. The SHPA planning policy giving a preference to conversion of hospital beds does not provide guidance as to whether the term 'when the conversion is significantly less costly' is intended to include only the actual conversion costs or the total per patient operating costs on an ongoing basis. If the former is true, Coosa Valley's application must be given a priority over that of Sylacauga due to the finding in paragraph 6 that Coosa Valley's conversion costs are significantly less than Sylacauga's. If the latter is true, the Board's finding that Coosa Valley's proposal is not significantly less costly than Sylacauga's in terms of operating costs would render the preference inapplicable.
 "19. The Board finds that the latter interpretation of this planning policy is implausible, in that it would render the preference meaningless. The Board concludes a more reasonable reading of the policy is to grant a distinct preference to the conversion of hospital beds when the conversion cost is less than that of new construction, assuming the existing structure can meet licensing and certification requirements. The Board finds such a preference to be consistent with the legislative purposes defined in Section 22-21-261, Code of Alabama 1975."
Sylacauga insists that the Board's interpretation of the planning policy and its utilization of that interpretation to award the CON to Coosa Valley were significant departures from the CON law. It suggests that the interpretation is a departure from the traditional edict that "the cost of providing health services is an important factor to be considered by the Board." Sylacauga asserts that the Board's interpretation was made without a rational or reasonable justification, that it was made without regard to the traditional principles of statutory construction, and that its decision was procedurally and constitutionally infirm.
On judicial review, the case law makes clear the fact that the SHPDA decision must be given preference. Indeed, a presumption of correctness attaches to an administrative agency's decision because of its recognized expertise in a specific, specialized area. State Health Planning and ResourceDevelopment Administration v. Rivendell of Alabama, Inc.,469 So.2d 613 (Ala.Civ.App. 1985). This court reviews the judgment of the trial court " 'without any presumption of correctness, since [that] court was in no better position to review the order of the Board than we are.' " Nursing Home of Dothan, Inc.v. Alabama State Health Planning Development Agency,
 *Page 268 542 So.2d 935 (Ala.Civ.App. 1988) (quoting Regional Dialysis of Annistonv. Northeast Alabama Kidney Clinic, Inc., 480 So.2d 1229
(Ala. 1985)). Our review is limited to questions of whether the agency exceeded its statutory authority, whether its decision was supported by substantial evidence, and whether its action was arbitrary. State Health Planning Agency v. MobileInfirmary, 533 So.2d 255 (Ala.Civ.App. 1988); Alabama Board ofNursing v. Herrick, 454 So.2d 1041 (Ala.Civ.App. 1984). As long as the agency action is rational and reasonably justified, it cannot be classified as arbitrary or capricious. Waters v.City County of Montgomery Personnel Board, 507 So.2d 951
(Ala.Civ.App. 1986). Furthermore, an agency's interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation. Ferlisi v. Alabama Medicaid Agency,481 So.2d 400 (Ala.Civ.App. 1985).
We do not find the Board's interpretation and utilization of the planning policy to be unreasonable or contrary to the scheme of existing CON law. The interpretation does not contradict existing CON law, and it does not disregard traditional principles of statutory construction. Rather, the interpretation simply adds an additional comparative analysis. We further find the interpretation and the utilization of the planning policy to have a rational and reasonable basis. As the Board noted in its decision:
 "If the planning policy is read to grant a preference to the conversion of hospital beds only when it can be shown that the per patient cost of providing service is significantly less for such provider when compared to competing applicants, the policy would simply restate the existing criteria for granting a CON."
We find no error with the Board's interpretation and utilization of the planning policy in awarding Coosa Valley its requested CON.
Sylacauga next asserts that the Board erred in granting Coosa Valley's request due to the incompleteness of Coosa Valley's application. Sylacauga insists that the application was incomplete because Coosa Valley clearly failed to supply schematic drawings of the facility (part 3 of the application) and the financial information needed to weigh its viability (part 5 of the application). It contends that the Board's decision was made without the application of any established standards and was, therefore, arbitrary and capricious.
In addressing this issue, the Board found the following:
 "1. The question of whether Coosa Valley was originally required to submit Part Five of its application points to an ambiguity in the SHPDA Rules and Regulations. Part Five of the SHPDA application forms, entitled, 'Utilization, Data and Financial Information' reflects the requirements of Section 410-1-6-.06(a) of the SHPDA Rules and Regulations, which states:
"(a) Budget and Utilization Data
 "For all proposals which cost in excess of five hundred thousand dollars ($500,000.00), or which propose a substantial change in service, or which would change the bed capacity of the facility in excess of ten percent (10%), or which propose a new facility, the applicant shall attach on forms provided by the state agency, budget and utilization data on which to determine the financial feasibility of the proposal.
 "2. The term 'substantial change in service' is defined in Section 410-1-2-. 19 of the SHPDA Rules and Regulations as including 'any change in the existing licensed bed capacity of a health care facility or health maintenance organization through the addition, termination, or conversion of one or more beds . . .'.
 "3. While Section 410-1-2-. 19 defines any change in the existing licensed bed capacity of a health care facility as being a 'substantial change in service,' the use of the word 'or' in Section 410-1-6-.06(a) strongly suggests that a change in bed capacity of under 10%, in and of itself, would not require the filing of budget and utilization data. The same conclusion can be drawn from Section 22-21-275 of the Code of Alabama 1975, which prescribes certain requirements which must be included in the SHPDA Regulations. Section 22-21-275(4) requires SHPDA Rules to allow a 'nonsubstantive, modified review' *Page 269 
for proposals of capital expenditures up to $500,000.00 which:
 "a. Do not result in a substantial change in service; or
 "b. Propose equipment to upgrade or expand an existing service; or
 "c. Increase the bed capacity by not more than ten percent of the existing bed capacity; . . .
 "4. Reading the SHPDA Rules and Regulations in conjunction with the requirements of Section 22-21-275(4) of the Code of Alabama 1975, the Board finds that a proposal to increase bed capacity less than ten percent, in and of itself, does not require the submission of budget and utilization data as prescribed under Part Five of the application form.
 "5. Regardless of whether Coosa Valley's application proposes a 'substantial change in service,' Sylacauga and Talladega assert that it certainly involves a change in the bed capacity in excess of ten percent. In making this determination, they argue that SHPDA must look at only the licensed nursing home beds of Coosa Valley, as opposed to the remaining acute-care beds in its facility.
 "6. The Board agrees with the movants that one reasonable interpretation of the SHPDA rules would be to include only similarly situated beds in calculating whether a proposal will change bed capacity by over ten percent. As with the definition of 'substantial change in service,' however, the language is ambiguous and could certainly be subject to varying interpretations. Thus, the Board concludes that, in regard to Part Five, the decision of the SHPDA staff to deem the application complete on June 26, 1989 was not an abuse of discretion and that Coosa Valley was in substantial compliance with the financial requirements section of the application.
 "7. Coosa Valley also failed to attach Part Three of the application, which requires, the attachment of 'schematics' and certain other architectural information. During the hearing, Mr. James Sanders of SHPDA testified that it has been the policy of the SHPDA staff not to require schematic drawings to be provided in instances where a CON applicant is proposing to convert the use of a bed from a previously licensed acute-care bed to a long-term nursing bed. It is noteworthy that the request that schematic drawings be filed in Part Three of the application is not a specific requirement under Alabama law or under the SHPDA Rules and Regulations. Reviewing the application form supplied by SHPDA in context with the SHPDA Rules and Regulations, the Board concludes that it is reasonable for an applicant and the SHPDA staff to interpret the application forms as not necessarily mandating the submission of schematic drawings in every instance.
 "8. The Board recognizes that, regardless of the SHPDA rules, the failure of a competing applicant to provide equivalent financial data and schematic drawings could, under certain circumstances, place the competing applicants at a disadvantage which could deny them their due process rights to a truly comparative hearing. In the present case, however, competing applicants were able to cross-examine Coosa Valley extensively as to the costs and the design of the proposed renovations. Additionally, the adequacy of all of the information filed in support of Coosa Valley's application is a relevant consideration for purposes of reviewing the merits of Coosa Valley's application and has been taken into account by the Board."
The Board's decision that Coosa Valley's application was complete for purposes of a comparative CON review proceeding was not made arbitrarily or capriciously. Its determination was based on sound reasoning and should be affirmed.Ferlisi.
In conclusion, we find that the Board acted within its conferred powers, that its decision was supported by substantial evidence, that the Board's decision is reasonable and not arbitrary, and that the Board's actions were not prejudicial to the substantial rights of Sylacauga.
The judgment of the circuit court is due to be affirmed. *Page 270 
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.