Rel: February 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

_____

### CL-2022-0538

_____

**Encompass Health Home Health of Alabama, LLC; Kindred at Home, LLC; Amedisys Home Health; and LHC Group, Inc.**

**v.**

**State Health Planning and Development Agency, Madison Home Health Services, LLC, and ProHealth Home Health, LLC**

**Appeal from the Certificate of Need Review Board of the State Health Planning and Development Agency**
**(AL2021-21)**

_____

### CL-2022-0539

_____

**Encompass Health Home Health of Alabama, LLC; Kindred at Home, LLC; Amedisys Home Health; and LHC Group, Inc.**

CL-2022-0538; CL-2022-0539

**v.**

**State Health Planning and Development Agency, Madison Home Health Services, LLC, and ProHealth Home Health, LLC**

**Appeal from the Certificate of Need Review Board of the State Health Planning and Development Agency**
**(AL2021-24)**

FRIDY, Judge.

In these consolidated appeals, Encompass Health Home Health of Alabama, LLC; Kindred at Home, LLC; Amedisys Home Health; and LHC Group, Inc. (collectively "the Intervenors"), appeal from a decision of the Certificate of Need Review Board ("the CONRB") of the State Health Planning and Development Agency ("SHPDA") issued in proceedings it had designated as Project No. AL2021-21 ("the Madison Project") and Project No. AL2021-24 ("the ProHealth Project"). The CONRB's decision in the Madison project granted the application of Madison Home Health Services, LLC ("Madison"), for a certificate of need ("CON") authorizing it to establish a home-health agency to provide home-health services in Madison County. The CONRB's decision in the ProHealth project granted the application of ProHealth Home Health, LLC ("ProHealth"), for a CON authorizing it to establish a home-health

agency to provide home-health services in Madison County.[1] For the reasons discussed herein, we affirm the CONRB's decisions to grant both the CON application of Madison and the CON application of ProHealth.

Background

In 2021, Madison and ProHealth each filed an application with SHPDA for a CON authorizing it to establish a home-health agency to provide home-health services in Madison County.[2] SHPDA "batched" Madison's and ProHealth's applications.[3] Thereafter, the Intervenors, all of which were already providing home-health services in Madison County, intervened in the SHPDA proceedings regarding Madison's and ProHealth's applications to oppose those applications and requested a contested-case hearing. SHPDA appointed attorney Mark Waggoner as

---

[1]Section 22-21-275(6), Ala. Code 1975, authorizes direct appeals to this court from final decisions of SHPDA.

[2]Caring Hearts Home Care, LLC ("Caring Hearts"), also filed an application for a CON authorizing it to establish a home-health agency to provide home-health services in Madison County in 2021; however, Caring Hearts subsequently withdrew its application.

[3]"Batching is the formal review in the same 90-day review cycle and comparative consideration of all completed applications pertaining to similar types of services, facilities, or equipment affecting the same health service area." Ala. Admin. Code (SHPDA), r. 410-1-7-.19(1).

the administrative-law judge ("ALJ") to conduct the contested-case hearing. The ALJ held a four-day contested-case hearing regarding both applications in September 2021.

On January 24, 2022, the ALJ issued a seventy-two-page recommended order in which he made proposed findings of fact and proposed conclusions of law; he also recommended that the CONRB grant the CON applications of both Madison and ProHealth. In pertinent part, the ALJ's recommended order stated:

"31. The undersigned ALJ has determined that, provided the CON review criteria are satisfied by both parties, there is adequate legal authority to approve both the Madison Project and the ProHealth Project, without any legal limitations requiring the grant of only one CON home health application in any given batching cycle.

"32. As an initial matter, the 2020-2023 Alabama State Health Plan, Ala. Admin Code § 410-2-1 et. seq. ('SHP') governs the Projects. The SHP is drafted by the State Health Coordinating Council ('SHCC') based on population and utilization data provided by the SHPDA Division of Data Management. Based on information provided by the SHPDA Division of Data Management, the SHP shows a need for an additional 964 patients to be served in Madison County -- the largest need shown in the entire state. (Madison Ex. 67). The Madison Project aims to treat 131 patients in year one and 364 patients in year two. (Madison Ex. 1). The ProHealth Project aims to treat 200 patients in year one and 450 patients in year two. (ProHealth Ex 1). Adding these two projections together, the projection of patients to be served by both applicants is still well below the 964 additional patients to be

4

served indicated by the SHP. Thus, under the need methodology set forth in the SHP, both Projects can be approved without exceeding the established need demonstrated under the SHP.

"33. Like the home health methodology, there are a number of other healthcare services that show a finite need under the SHP. For example, the nursing home methodology sets forth the additional number of nursing home beds necessary to satisfy the projected need. Ala. Admin. Code § 410-2-4-.03. The same is true of the methodology for hospital beds and [Specialty Care Assisted Living Facility] beds. Ala. Admin. Code § 410-2-4-.02 and 410-2-4-.04. Even though this finite need results in a batching cycle, there have been a number of batching cycles over the years where SHPDA has approved multiple CON applications and awarded beds under these finite need methodologies to multiple facilities. As long as the total number of beds awarded to the multiple applicant facilities does not exceed the bed need indicated in the SHP, SHPDA precedent has shown that awarding multiple CONs is consistent with the SHP, compliant with the Agency's interpretation of the CON Rules, and is not legally prohibited. The case at hand is no different. The need methodology for home health sets forth a finite number of additional patients to be served, and, as long as the total patient projections set forth in the multiple applications do not exceed the patient need, just like when the total number of beds set forth in the multiple applications do not exceed the bed need, more than one home health agency can similarly be approved.

"34. Further, there is nothing in the CON Rules or the SHP that limits the grant of only one CON application for home health services. In fact, the SHP directly acknowledges that approving more than one applicant is permissible when setting forth the purpose behind the need methodology. 'The purpose of this home health need methodology is to identify, by county, the number of home health agencies needed to assure the continued availability, accessibility, and

5

affordability of quality home health care for residents of Alabama.' Ala. Admin. Code § 410-2-4-.07 (emphasis added). The use of the word 'agencies' leaves the door open for more than one agency to be approved if the need is high enough to support the approval of multiple projects.

"35. Had SHPDA or the SHCC desired to limit the approval to only one home health project, they could have included such prohibiting language in the CON Rules or the SHP. In fact, under the need methodology for methadone treatment facilities, the SHCC explicitly states that only one facility can be awarded a CON during an application cycle. 'Only one methadone treatment facility may be approved in any region showing a need under this methodology during any application cycle, defined here as the period of time between the date of publication of one statistical update and the date of publication of a successive update.' Ala. Admin. Code § 410-2-4-.11(4). Similar language appears in the in-home hospice section of the SHP. 'Only one (1) application may be approved in each county during any approval cycle as defined by the Statewide Health Coordinating Council, or as implemented by SHPDA.' Ala. Admin. Code § 410-2-3-.10.

"36. Thus, in both of those instances, when the SHCC desired for only one CON to be granted in a given cycle, the SHCC explicitly stated such limitation in the SHP. As it relates to home health, the SHCC did not include similar language or in any way limit the number of projects that can be approved, though it certainly could have done so. Thus, presumably such a limitation was not the intent of the SHCC with regard to home health. In Alabama, 'the fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.' IMED Corp. v. Sys. Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992). A court should

6

not 'read into the statute something which the legislature did not include although it could have easily done so.' <u>Noonan v. E. W. Beltline, Inc.</u>, 487 So. 2d 237, 239 (Ala. 1986).

"37. In addition, Mrs. Jessica Bailey-Wheaton, a JD with a concentration in health law and a health planning expert, testified that, in her expert opinion, the SHP would allow for the approval of more than one agency based, in part, on the fact that the purpose language of the SHP utilized the word 'agencies' in the plural form.

> "[']Q.--home health providers. Do you have any idea--any opinion as to whether this would allow more than one provider to be appropriate [or approved]?
>
> "[']A. Sure. It indicates from the -- plain language that the purpose is to identify the number of home health agencies, as in the plural form of agencies.
>
> "[']Q. Okay. And given the need that SHPDA found of 964, do you think that supports the approval of one or more than one agency?
>
> "[']A. I certainly believe it -- it allows for more than one healthy -- home health agency.[']"

"(Tr. 252-253).

"38. Subsequently in the home health section of the SHP, it states 'if the number is equal to or greater than 100, there is a need for a new Home Health Care provider in a county.' Ala. Admin. Code § 410-2-4-.07. When asked about the subsequent language in the SHP that utilized the singular form of 'a' new home health agency, Mrs. Bailey-Wheaton stated that, since this language is after the purpose section of the SHP, her interpretation is that it would be a minimum, meaning if a need exceeds 100, at least one home health

provider may be approved. (Tr. 290). However, she does not believe, when the provisions in the SHP are read in conjunction, that this language limits the approval to only one home health agency in any given batching cycle. (Tr. 252-253, 290). This interpretation by Mrs. Bailey-Wheaton is consistent with Ala. Code § 1-1-2 that states with regard to statutory construction that 'the singular includes the plural, and the plural the singular.'

"39. Dan Sullivan, a nationally recognized health planning expert with over 30 years' experience, also testified regarding whether or not the SHP allows for more than one home health agency to be approved in any given batching cycle. According to Mr. Sullivan:

"[']Q. Do you have an opinion, Mr. Sullivan, based on your background, training, and experience in health care, as to whether or not, specifically as to Madison County, more than one CON application could be granted?

"[']A. Yeah. I -- my opinion is that I believe more than one could be granted because of the fact that there's a need for 964 additional patients to be served, and the threshold for approving another agency is there need be at least 100 patients ....

"[']Q. Okay. Based on you review -- and just to clarify, based on your review of everything, is it your opinion that two agencies could be approved in this situation based on the need?

"[']A. Yes. And you know -- and I think not only based on the need, but I think, you know, given the significant differential between the historical use rate in Madison County and the statewide rate, I think having two agencies come in, they could capture additional patients without necessarily

8

> having any material impact on the existing system.[']"

"(Tr. 337, 365)

> "40. Thus, the legal framework and evidence support the approval of both the Madison Project and the ProHealth Project."

The Intervenors timely filed exceptions to the ALJ's recommended order on January 31, 2022, and Madison and ProHealth filed a joint written response to the Intervenors' exceptions. The CONRB considered the record of the contested-case hearing, the ALJ's recommended order, the Intervenors' exceptions, Madison and ProHealth's joint response, and oral arguments regarding whether the applications should be granted at its meeting on February 16, 2022. The CONRB then voted to adopt the ALJ's recommended order and to grant both CON applications. On March 3, 2022, the CONRB issued a written order adopting the ALJ's recommended order in both the Madison project and the ProHealth project and granting the CON applications of both Madison and ProHealth. Among other things, the CONRB's written order stated:

> "The Intervenors also contend that the CON Rules and the State Health Plan ('SHP') allow for only one CON application to be granted per application cycle. In support, the Intervenors note the use of the singular article 'a' and 'an' in the home health methodology, [CONRB's] decision in a 2014

9

proceeding involving multiple Baldwin County home health applications, and the SHCC's failure to amend the SHP to explicitly permit the grant of multiple applications.

"6. The Intervenors correctly note that in 2014 [the CONRB], in a split vote, found that the SHP permitted the grant of only one home health CON application per application cycle. [The CONRB] has revisited that issue in the current case and finds that the language of the SHP permits the grant of more than one application in extraordinary circumstances where, as here, the demonstrated need in the SHP exceeds the reasonable visitation projections of both applicants. See Ex parte Shelby Med. Ctr., 564 So. 2d 63, 68 (Ala. 1990) ('Because there is a need for flexibility in administrative decision-making, the doctrine of stare decisis generally does not bind administrative agencies to their prior decisions.')."

(Emphasis added.) The Intervenors timely filed their notices of appeal on February 24, 2022.

## Discussion

On appeal, the Intervenors first argue that § 22-21-264(5), Ala. Code 1975, prohibits SHPDA from granting more than one application for a CON to establish a home-health agency to provide home-health services in the same batch. Specifically, the Intervenors cite the language of § 22-21-264(5), Ala. Code 1975, which provides in part that SHPDA shall prescribe by rules and regulations the criteria for determining "that the person applying [for a CON] is an appropriate applicant, or the most

10

appropriate applicant in the event of duplicative applications." (Emphasis added.) The Intervenors contend that the language of § 22-21-264(5) prohibits SHPDA from granting more than one CON application whenever there is more than one application in a single batch. In effect, the Intervenors argue that the term "duplicative applications" in that Code section is synonymous with "multiple applications." Thus, according to the Intervenors, whenever there are multiple applications to establish a home-health agency in a single batch, § 22-21-264(5) allows the CONRB to grant only one of them, i.e., the one that it determines is the most appropriate one, regardless of the number of new patients who need home-health services and regardless of the number of new patients that the most appropriate applicant projects that it can serve.

In its order granting the CON applications of both Madison and ProHealth, the CONRB stated that it found "that the language of the [State Health Plan] permits the grant of more than one application in extraordinary circumstances where, as here, the demonstrated need in the [State Health Plan] exceeds the reasonable visitation projections of both applicants." We infer from that language that the CONRB determines that applications are "duplicative" only if there is some

11

overlap in the number of patients the applicants seek to serve such that, when combined, the number of patients that the applicants seek to serve exceeds the total number of patients who are projected to need the applicants' services. In the present case, because the State Health Plan ("the SHP"), See Ala Admin. Code (SHPDA), r. 410-2-1 et seq. projects that 964 new patients will need home-health services and because that number exceeds the combined maximum number of patients that Madison and ProHealth project that they can serve, each of them can provide home-health services to the maximum number of patients that it projects that it can serve without any overlap in the patients. Thus, under the CONRB's interpretation of the law, because these two applicants can each serve the maximum number of patients that they seek to serve without any overlap in the patients that they serve, their applications are not "duplicative" under the CONRB's interpretation of § 22-21-264(5).

In interpreting a statute, a court accepts an administrative interpretation of the statute by the agency charged with its administration, if that interpretation is reasonable. See Alabama Dep't of Revenue v. Bryant Bank, 278 So. 3d 1268, 1271 (Ala. Civ. App. 2018). We conclude that the CONRB's interpretation of § 22-21-264(5) is

reasonable. See, e.g., Black's Law Dictionary 635 (11th ed. 2019) (defining "duplicative" as "[h]aving or characterized by having overlapping content, intentions, or effect"). Therefore, we accept it as a correct interpretation of that Code section. Thus, we conclude that that Code section did not prohibit the CONRB from granting both the CON application of Madison and the CON application of ProHealth in this case.

The Intervenors also argue that Ala. Admin. Code (SHPDA) r. 410-1-6-.09(1), which states that the CONRB shall determine who is "the most appropriate applicant in the event of competing applications," prohibited the CONRB from granting more than one CON application. (Emphasis added.) We infer from the language of the CONRB's order that it interpreted the term "competing applications" to mean applications seeking to serve some of the same patients. Here, as discussed above, Madison and ProHealth could both serve the maximum number of patients that they sought to serve without any overlap in patients because the total number of new patients in Madison County that the SHP projects will need home-health services (964) exceeded the combined maximum number of patients that they, projected that they could serve

13

(814). "'[A]n agency's interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.'" Select Specialty Hosps., Inc. v. Alabama State Health Plan. & Dev. Agency, 112 So. 3d 475, 485 (Ala. Civ. App. 2012) (quoting Sylacauga Health Care Ctr., Inc. v. Alabama State Health Plan. Agency, 662 So. 2d 265, 268 (Ala. Civ. App. 1994)). We conclude that the CONRB's interpretation of r. 410-1-6-.09(1) is reasonable. See, e.g., Black's Law Dictionary 355 (11th ed. 2019) (defining "competition" as "The struggle for commercial advantage; the effort or action of two or more commercial interests to obtain the same business from third parties"). Therefore, we must accept it as a correct interpretation of that rule. Thus, we conclude that r. 410-1-6-.09(1) did not prohibit the CONRB from granting both the CON application of Madison and the CON application of ProHealth.

The Intervenors also argue that Ala. Admin. Code (SHPDA), r. 410-2-4-.07(6)(c)5.(ii)(Step 2)11. prohibited the CONRB from granting more than one CON application in this case. In pertinent part, that rule states that "[a] threshold level of 100 new patients needed to be served is required for a determination of need in a county" and that "[i]f the

14

number is equal to or greater than 100, there is a need for a new Home Health Care provider in a county." (Emphasis added). The Intervenors argue that that rule means that, if the number of new patients who need home-health services is equal to or greater than 100, the CONRB can grant only one CON application regardless of how many new patients need home-health services and regardless of whether any one applicant seeks to treat all of them. The undisputed facts of the present case indicate that the projected the number of new patients who will need home-health services in Madison County is 864 more than 100 and that neither applicant seeks to serve more than half of the 964 new patients. The Intervenors' interpretation would mean that the CONRB would be limited to granting only one application even though Madison projects that it could serve a maximum of only 364 of the 964 new patients and ProHealth projects that it could serve a maximum of only 450 of the 964 new patients. The Intervenors' interpretation of r. 410-2-4-.07(6)(c)5.(ii)(Step 2)11. would leave either 600 new patients without home-health services, if the CONRB granted only Madison's CON application, or 514, if the CONRB granted only ProHealth's CON application.

Conversely, we infer from the language of its order that the CONRB interprets r. 410-2-4-.07(6)(c)5.(ii)(Step 2)11. to establish the minimum number of new patients that would justify granting a CON to a new home-health agency as 100 but that it does not purport to establish the maximum number of CON applications that could be granted once that minimum number of 100 patients has been met. This interpretation is consistent with the rule's describing 100 new patients needing home-health services as a "threshold level" of new patients required to establish a need for a new home-health agency. The rule does not purport to address a situation in which the projected number of new patients exceeds nine-fold the threshold level for granting a CON. As noted above, an agency's interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation. See Select Specialty Hosps., Inc., supra. We conclude that the CONRB's interpretation of r. 410-2-4-.07(6)(c)5.(ii)(Step 2)11. is reasonable, and, therefore, we accept it as a correct interpretation of that rule. Thus, we conclude that that rule did not prohibit the CONRB from granting both the CON application of Madison and the CON application of ProHealth in this case.

16

The Intervenors also argue that the language of Ala. Admin. Code (SHPDA), r. 410-2-4-.07(6)(c)2. prohibited the CONRB from granting more than one CON application in the present case. In pertinent part that rule states: "When a new provider is approved for a county, that provider will have eighteen (18) months from the date the Certificate of Need is issued to meet the identified need in the county before a new provider may apply for a Certificate of Need to serve a county." (Emphasis added.) The language of that rule presupposes that the applicants for a CON seek to satisfy all the identified need in the county. In the present case, neither Madison nor ProHealth sought to satisfy all 964 new patients in Madison County, which was the need the SHP identified in that county. Consequently, it is obvious that neither Madison nor ProHealth could satisfy the need identified in Madison County within eighteen months. We infer from the language of the CONRB's order that it concluded that r. 410-2-4-.07(6)(c)2. did not prohibit the granting of both Madison's CON application and ProHealth's CON application because the presupposition of that rule, i.e., that each of the applicants was seeking to satisfy the entire need, did not apply in this case. That interpretation is reasonable and, therefore, we accept it

as a correct interpretation. See Select Specialty Hosps., Inc., supra. Therefore, we conclude that r. 410-2-4-.07(6)(c)2. did not prohibit the CONRB from granting the CON applications of both Madison and ProHealth in this case.

The Intervenors next argue that the CONRB's approval of the applications of both Madison and ProHealth constituted a reinterpretation of its regulations that rose to the level of a "rule" and, therefore, required notice and comment under the Alabama Administrative Procedure Act ("the AAPA") before it could be implemented. The term "rule" is defined by § 41-22-3(9), Ala. Code 1975, which is part of the AAPA. In pertinent part, that Code section provides that the term "rule" does not include "[d]eterminations, decisions, orders, statements of policy, and interpretations that are made in contested cases." § 41-22-3(9)d., Ala. Code 1975. It is undisputed that the CONRB's decision was issued in a contested case. Thus, by its express terms, that Code section excludes the CONRB's decision in this case from the definition of "rule."

The Intervenors next argue that the CONRB's decision to approve both applications in this case is arbitrary and capricious because, they

say, it conflicts with the CONRB's decisions in two 2014 contested cases, one involving multiple applications for a CON to establish a home-health agency in Shelby County and the other involving multiple applications for a CON to establish a home-health agency in Baldwin County. In both of those cases the ALJ had recommended that the CONRB approve more than one of the CON applications, but the CONRB approved only one CON application for Shelby County and approved only one CON application for Baldwin County. Following those decisions, in July 2014, the CONRB requested that the Statewide Health Coordinating Council ("the SHCC") amend the former SHP to expressly state that the CONRB had the discretion to approve more than one CON application to establish a home-health agency in a county where the SHP showed a need for more than one new home-health agency. The SHCC declined that request.

"Because there is need for flexibility in administrative decisionmaking, the doctrine of stare decisis generally does not bind administrative agencies to their prior decisions. Thus, when inconsistent determinations are made by an administrative agency, the issue is whether the agency has acted in an arbitrary and capricious manner." Ex parte Shelby Med. Ctr., Inc., 564 So. 2d 63, 68 (Ala. 1990). "'As long

19

as the agency action is rational and reasonably justified, it cannot be classified as arbitrary or capricious.'" Select Specialty Hosps., Inc., supra (quoting Sylacauga Health Care Ctr., Inc. v. Alabama State Health Plan. Agency, 662 So. 2d 265, 268 (Ala. Civ. App. 1994)). "'Furthermore, an agency's interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation."' Id. (Citation omitted.)

The Intervenors do not dispute any of the proposed factual findings in the ALJ's recommended order, which the CONRB adopted. Specifically, they do not dispute that both Madison and ProHealth satisfied all the criteria and prerequisites necessary for the CONRB's approval of their CON applications. The Intervenors do not dispute that both Madison and ProHealth are appropriate for purposes of the CONRB's approval of their CON applications. Moreover, they do not dispute that the 964 new patients that will need home-health care according to the projections in the SHP exceed the aggregate projected number of patients that both Madison and ProHealth can serve in their first two years of operation. The Intervenors' sole ground for contending that the CONRB's decision is arbitrary and capricious is its alleged

20

violation of § 22-21-264(5), r. 410-1-6-.09(1), r. 410-2-4-.07(6)(c)5.(ii)(Step 2)11., and r. 410-2-4-.07(6)(c)2. However, as demonstrated above, the CONRB's decision does not violate that Code section or those SHPDA rules. Moreover, neither the applicable Code sections nor SHPDA's regulations expressly prohibit the CONRB from approving two CON applications in a single batch under the facts of this case. Therefore, we conclude that the CONRB's decision to approve the CON applications of both Madison and ProHealth is not arbitrary and capricious.

Although the SHCC in 2014 declined to amend the SHP to expressly grant the CONRB discretion to approve more than one CON application in a county where the SHP showed a need for more than one new home-health agency, such an amendment was not necessary to confer that discretion on the CONRB because nothing in the SHP, the applicable law, or the applicable SHPDA rules prohibits the CONRB from approving more than one CON application to establish a home-health agency in a county under those circumstances. It is noteworthy that the SHCC also did not amend the SHP to expressly prohibit the CONRB from approving more than one CON application under those circumstances as it did in the case of CON applications to provide methadone treatment.

21

Because the SHP, the applicable law, and the applicable SHPDA rules allow the CONRB to approve more than one CON application in a single batch under the facts of this case, the CONRB's decision to approve both Madison's and ProHealth's CON applications was not arbitrary and capricious. Therefore, we affirm the CONRB's decisions.

CL-2022-0538 -- AFFIRMED.

CL-2022-0539 -- AFFIRMED.

Thompson, P.J., and Moore, Edwards, and Hanson, JJ., concur.